## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

ANTONIO CASTILLO,
ALEXANDER MENDEZ,                                  CASE NO.: 24-cv-22055-RKA
JOSE MIGUEL LOPEZ,
NICHOLAS LOVE,
RAUL CASTRILLO,
JAVIER EXPOSITO,
JESSICA COBAS,
MARGARELYS FLORES,
NALLELY FERNANDES,
MARIANGEL VILLAREAL,
ZHUO CHOI, ANGELICA GIANOS,
JHOEL GUSTAVO FRAILE HERRERA,
ALMARY LABARCA
HUSSEIN KARIM KARIM
LISABETH REVILLA,
MARICELLYS DEL CARMEN CASTRILLO
FLORES, JOSE ARMANDO RODRIGUEZ,
CARLEIDY DURAN, YAMIRELLYS SABBAGH,
JESIKA NAVAS URRIBARRI,
JULIANA CHACON, MARIA GABRIELA RODRIGUEZ,
JENNIFER RAMOS, GABRIELA RODRIGUEZ and
all others similarly situated under 29 U.S.C.216

   *Plaintiffs,*

v.                                                  **DEMAND FOR JURY TRIAL**

SHOMA GROUP, LLC,
a Florida Limited Liability Company d/b/a
SHOMA BAZAAR, SHOMA BAZAAR ONE, LLC
MASOUD SHOJAEE, PAUL J. PRICE, and
STEPHANIE SHOJAEE

   *Defendants.*

             /

## <u>SECOND AMENDED COMPLAINT</u>

   Plaintiffs, ANTONIO CASTILLO, ALEXANDER MENDEZ, JOSE MIGUEL LOPEZ,

NICHOLAS LOVE, RAUL CASTRILLO, JAVIER EXPOSITO, JESSICA COLBAS,

MARGARELYS FLORES, NALLELY FERNANDES, MARIANGEL VILLAREAL, ZHUO

CHOI, ANGELICA GIANOS, JHOEL GUSTAVO FRAILE HERRERA, ALMARY LABARCA, HUSSEIN KARIM KARIM, LISABETH REVILLA, MARICELLYS DEL CARMEN CASTRILLO FLORES, JOSE ARMANDO RODRIGUEZ, CARLEIDY DURAN, YAMIRELLYS SABBAGH, JESIKA NAVAS URRIBARRI, JULIANA CHACON, MARIA GABRIELA RODRIGUEZ, and JENNIFER RAMOS on behalf of themselves and all others similarly situated under 29 U.S.C.216 (collectively, "Plaintiffs"), pursuant to 29 U.S.C. §§ 201 - 219, and Art. X, Sec. 24 of the Florida Constitution, through the undersigned counsel, file this Complaint for Damages and Demand for Jury Trial against Defendants, SHOMA GROUP, LLC, d/b/a SHOMA BAZAAR ("Shoma Group"), SHOMA BAZAAR ONE, LLC ("Shoma Bazaar"), MASOUD SHOJAEE ("Masoud"), PAUL J. PRICE ("Price"), and STEPHANIE SHOJAEE ("Shojaee") (collectively "Defendants"), jointly and severally, and allege as follows:

## INTRODUCTION

1.      Plaintiffs bring this action under the Fair Labor Standards Act ("FLSA"), the Florida Minimum Wage Act ("FMWA"), and Art. X, Sec. 24 of the Florida Constitution, to recover compensation and other relief.

2.      Defendants committed federal and state minimum wage violations because they improperly allowed Supervisors and Managers in the tipping pool and improperly kept Plaintiffs' tips.

3.      As a result, Plaintiffs have been denied federal and state minimum wages and tips during various workweeks within the relevant time period.

## PARTIES

4.      During all times material hereto, Plaintiff ANTONIO CASTILLO was a resident of Miami-Dade County, Florida, over the age of 18 years, and otherwise *sui juris*.

Page 2 of 28

5. During all times material hereto, Plaintiff ALEXANDER MENDEZ was a resident of Miami-Dade County, Florida, over the age of 18 years, and otherwise *sui juris*.

6. During all times material hereto, Plaintiff JOSE MIGUEL LOPEZ was a resident of Miami-Dade County, Florida, over the age of 18 years, and otherwise *sui juris*.

7. During all times material hereto, Plaintiff NICHOLAS LOVE was a resident of Miami-Dade County, Florida, over the age of 18 years, and otherwise *sui juris*.

8. During all times material hereto, Plaintiff RAUL CASTRILLO was a resident of Miami-Dade County, Florida, over the age of 18 years, and otherwise *sui juris*.

9. During all times material hereto, Plaintiff JAVIER EXPOSITO was a resident of Miami-Dade County, Florida, over the age of 18 years, and otherwise *sui juris*.

10. During all times material hereto, Plaintiff JESSICA COLBAS was a resident of Miami-Dade County, Florida, over the age of 18 years, and otherwise *sui juris*.

11. During all times material hereto, Plaintiff MARGARELYS FLORES was a resident of Miami-Dade County, Florida, over the age of 18 years, and otherwise *sui juris*.

12. During all times material hereto, Plaintiff NALLELY FERNANDES was a resident of Miami-Dade County, Florida, over the age of 18 years, and otherwise *sui juris*.

13. During all times material hereto, Plaintiff MARIANGEL VILLAREAL was a resident of Miami-Dade County, Florida, over the age of 18 years, and otherwise *sui juris*.

14. During all times material hereto, Plaintiff ZHUO CHOI was a resident of Miami-Dade County, Florida, over the age of 18 years, and otherwise *sui juris*

15. During all times material hereto, Plaintiff ANGELICA GIANOS was a resident of Miami-Dade County, Florida, over the age of 18 years, and otherwise *sui juris*.

16. During all times material hereto, Plaintiff JHOEL GUSTAVO FRAILE HERRERA was a resident of Miami-Dade County, Florida, over the age of 18 years, and otherwise *sui juris*.

17. During all times material hereto, Plaintiff HUSSEIN KARIM KARIM was a resident of Miami-Dade County, Florida, over the age of 18 years, and otherwise *sui juris*.

18. During all times material hereto, Plaintiff ALMARY LABARCA was a resident of Miami-Dade County, Florida, over the age of 18 years, and otherwise *sui juris*.

19. During all times material hereto, Plaintiff LISABETH REVILLA was a resident of Miami-Dade County, Florida, over the age of 18 years, and otherwise *sui juris*.

20. During all times material hereto, Plaintiff MARICELLYS DEL CARMEN CASTRILLO FLORES was a resident of Miami-Dade County, Florida, over the age of 18 years, and otherwise *sui juris*.

21. During all times material hereto, Plaintiff JOSE ARMANDO RODRIGUEZ was a resident of Miami-Dade County, Florida, over the age of 18 years, and otherwise *sui juris*.

22. During all times material hereto, Plaintiff CARLEIDY DURAN was a resident of Miami-Dade County, Florida, over the age of 18 years, and otherwise *sui juris*.

23. During all times material hereto, Plaintiff YAMIRELLYS SABBAGH was a resident of Miami-Dade County, Florida, over the age of 18 years, and otherwise *sui juris*.

24. During all times material hereto, Plaintiff JESIKA NAVAS URRIBARRI was a resident of Miami-Dade County, Florida, over the age of 18 years, and otherwise *sui juris*.

25. During all times material hereto, Plaintiff JULIANA CHACON was a resident of Miami-Dade County, Florida, over the age of 18 years, and otherwise *sui juris*.

26.    During all times material hereto, Plaintiff MARIA GABRIELA RODRIGUEZ was a resident of Miami-Dade County, Florida, over the age of 18 years, and otherwise *sui juris.*

27.    During all times material hereto, Plaintiff GABRIELA RODRIGUEZ was a resident of Miami-Dade County, Florida, over the age of 18 years, and otherwise *sui juris*

28.    During all times material hereto, Plaintiff JENNIFER RAMOS was a resident of Miami-Dade County, Florida, over the age of 18 years, and otherwise *sui juris.*

29.    Plaintiffs are non-exempt Front of the House employees who worked for Defendant at their food hall establishment, known as Shoma Bazaar, located at 9420 NW 41st St, Doral, FL 33178.

30.    Plaintiffs and the FLSA and FMWA putative class members are or were hired as bartenders, bussers, or barbacks at Defendant's Shoma Bazaar food hall within the last three years and were 'tipped' non-exempt employees, as defined under the FLSA.

31.    Plaintiffs worked for Defendants as bartenders, bussers, or barbacks at Shoma Bazaar within the last three years,

32.    The proposed class members worked for Defendants in the same capacity as Plaintiffs in that they were bartenders, bussers, or barbacks at Shoma Bazaar.

33.    Plaintiffs seek certification of three separate classes under Fed. R. Civ. P. 23 and 29 U.S.C. § 216(b) for violations of the FLSA as follows:

   a.   **Tip Notice Class**: All bartenders, bussers, and barbacks who worked for Defendants during the three years preceding this lawsuit who were not provided the appropriate tip credit notice from Defendants that they would be taking a tip credit toward the required federal minimum wage.

    b.   **Sub-Minimum Wage Class**: All bartenders, bussers, and barbacks who worked for Defendants the last three years preceding this lawsuit who were paid less than the applicable federal minimum wage.

    c.   **Unlawful Tip Confiscation Class**: All bartenders, bussers, and barbacks who worked for Defendants the last three years preceding this lawsuit whose tips were unlawfully confiscated by Defendants as a result of Defendants unlawful tip pooling practices and underreporting the total amount of tips left by clients of Shoma Bazaar for the tipped employees.

34.    Plaintiffs seek certification of three separate classes under Fed. R. Civ. P. 23, the FMWA, and Florida Constitution for Florida Minimum Wage violations as follows:

    a.   **Tip Notice Class**: All bartenders, bussers, and barbacks who worked for Defendants during the three years preceding this lawsuit who were not provided the appropriate tip credit notice pursuant to Fla. Const. Art. X 24(c) and/or F.S. § 448.110.

    b.   **Sub-Minimum Wage Class**: All bartenders, bussers, and barbacks who worked for Defendants the last three years preceding this lawsuit who were paid less than the applicable Florida minimum wage.

    c.   **Unlawful Tip Confiscation Class**: All bartenders, bussers, and barbacks who worked for Defendants the last three years preceding this lawsuit whose tips were unlawfully confiscated by Defendants as a result of Defendants unlawful tip pooling practices and underreporting the total amount of tips left by clients of Shoma Bazaar for the tipped employees.

35.     The precise size and identity of each class should be ascertainable from the business records, tax records, and/or employee or personnel records of Defendants; however, Plaintiffs estimates that the total number of class members in each class above exceeds 50 bartenders, bussers, and barbacks.

36.     Upon information and belief, Defendants have records identifying the exact dates when they employed Plaintiffs as front-of-the-house tipped employees.

37.     During all times material hereto, Defendant SHOMA GROUP, LLC was a Florida limited liability company operating and transacting for-profit business within Miami-Dade County, Florida, within the jurisdiction of this Honorable Court. Upon information and belief, the Defendant Shoma Group was the Plaintiffs' "employer" as defined by the FLSA and FMWA for the Plaintiffs' respective period of employment ("relevant time period").

38.     Defendant Shoma Group, LLC, operates under the fictitious name of "Shoma Bazaar Food Hall," a food hall in Miami, Florida.

39.     During all times material hereto, Defendant SHOMA BAZAAR ONE, LLC was a Florida limited liability company operating and transacting for-profit business within Miami-Dade County, Florida, within the jurisdiction of this Honorable Court. Upon information and belief, Defendant Shoma Bazaar was the Plaintiffs' "employer" as defined by the FLSA and FMWA for the relevant time period.

40.     The individual Defendant, MASOUD SHOJAEE, is a corporate officer and/or owner and manager of the Defendant corporations, Shoma Group and Shoma Bazaar (collectively "Corporate Defendants" or "Defendant Corporations"), who ran the day-to-day operations of the Corporate Defendants for the relevant time period and/or was responsible for paying Plaintiffs

their wages for the relevant time period and controlled Plaintiffs' work and schedule and was, therefore, Plaintiffs employer as defined by 29 U.S.C. § 203(d).

41.     The individual Defendant, PAUL J. PRICE, is a corporate officer and/or owner and manager of the Defendant Corporations, who ran the day-to-day operations of the Corporate Defendants for the relevant time period, controlled Plaintiffs' work and schedule, and was, therefore, Plaintiffs employer as defined by 29 U.S.C. § 203(d)

42.     The individual Defendant, STEPHANIE SHOJAEE, is a corporate officer and/or owner and manager of the Defendant Corporations, who ran the day-to-day operations of the Corporate Defendants for the relevant time period, controlled Plaintiffs' work and schedule and was, therefore, Plaintiffs employer as defined by 29 U.S.C. § 203(d).

43.     During all times material hereto, Defendants owned, operated, and controlled the Shoma Bazaar food hall located at 9420 NW 41st St, Doral, FL 33178.

44.     Defendants were the Plaintiffs' "employer" as defined by the FLSA and FMWA during all times pertinent to the allegations herein.

45.     During all times material hereto, Defendants were vested with control and decision-making authority over the hiring, firing, scheduling, day-to-day operations, and pay practices of the Shoma Bazaar food hall.

46.     Defendants implement uniform pay, tip, and time-keeping practices at the Shoma Bazaar food hall that apply to all Front of the House employees.

## JURISDICTION AND VENUE

47.     This Court has original jurisdiction over the Plaintiff's federal question claims pursuant to 28 U.S.C. §1331 and 26 U.S.C. §201, *et seq.*, and supplemental jurisdiction over the Plaintiffs' claims arising under Florida law pursuant to 28 U.S.C. §1367 and/or 28 U.S.C. §1343.

48.     Defendants regularly transact business in Miami-Dade County, Florida, and jurisdiction is therefore proper.

49.     The acts or omissions in this dispute occurred within Miami-Dade County, Florida.

50.     Venue in this Court is proper under 28 U.S.C. §1391(b)(ii) because Defendants transact business in this District, and because Plaintiffs worked in Miami-Dade County, were paid in Miami-Dade County, and were due to be paid the tips that they earned in Miami-Dade County.

51.     Plaintiffs fulfilled all conditions precedent required to bring their claims under the FMWA.

52.     More specifically, on January 10, 2024, Plaintiffs, through their counsel, served Defendant Shoma Group with a written pre-suit demand notice regarding their FMWA claims, requesting Defendant to pay them the minimum wages owed to them.

53.     As of this lawsuit's filing, Defendants refuse to pay Plaintiffs any wages or tips wrongfully appropriated by Defendants.

**FLSA COVERAGE**

54.     Defendants Shoma Group and Shoma Bazaar are an enterprise covered by the FLSA because they are engaged in commerce and in the production of goods for commerce, in that Defendants have at least two or more employees engaged in commerce and in the production of goods for commerce, and two (2) or more employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.

55.     During all time periods pertinent hereto, Defendant Corporations' employees regularly handled goods and materials such as food, beverages, napkins, silverware, appliances, rice, beer, Corona Extra, Corona Light, vodka, Jack Daniels whiskey, meat, chicken, pork, cheese,

broccoli, carrots, peas, oil, zucchini, wings, mahi mahi, salmon, onions, peppers, crab, shrimp, beef, steak, potatoes, bread, hot sauce, BBQ sauce, cheese, buns, jalapenos, celery sticks, lobster broth, yellowfin tuna, plum tomatoes, cauliflower, avocados, taco shells, fajitas, salt, other food items, restaurant equipment, chairs, tables, vacuum cleaners, pens, paper, receipts, computers, credit card processors, staples, toothpicks, mints, flour, sugar, coffee, tea, soda, water bottles, and other materials that had previously traveled through interstate commerce.

56. The Defendant Corporations each had annual gross revenues over $500,000.00 in 2022 and 2023 and are expected to gross in excess of $500,000.00 in 2024.

## **FACTS**

*Putative Class Action*

57. The Defendant Corporations have additional former and current employees who are similarly situated as the Plaintiffs in this lawsuit ("Putative Class").

58. The number of current and former employees whose rights under the FLSA and FMWA have been violated by the Defendants is so numerous that a separate joinder of each employee is impracticable.

59. Joining all the Putative Class members to this lawsuit is impracticable because, upon information and belief, there are over fifty current and former employees whose rights under the FLSA and FMWA have been violated by the Defendants as a result of the Defendants stealing their tips and paying them below the required federal and state minimum wage.

60. The facts in this lawsuit alleged by the Plaintiffs are all similar or exact to the facts the Putative Class can allege against Defendants.

61. All violations of the FLSA and FMWA are the same between the Plaintiffs in this lawsuit and the Putative Class.

62. Therefore, all questions of law are common between the Plaintiffs in this lawsuit and the Putative Class.

63. The claims by the Plaintiffs in this lawsuit are the same claims by the Putative Class against Defendants—violations of the FLSA and the FMWA.

64. The Plaintiffs in this lawsuit are in the best position to fairly and adequately protect the interests of the Putative Class because they are all former and current employees looking to improve their current workplace or seek remedy for the injustice they experienced at the hands of the Defendants.

*Hiring Process*

65. Defendant Corporations hired Plaintiffs as bartenders, bussers, or barbacks at Defendant Corporations' establishment and were 'tipped' employees under the FLSA.

66. The Defendant Corporations interviewed Plaintiffs and, on the same day, offered them a job as a bartender, busser, or barback.

67. Plaintiffs' interviews did not last more than fifteen to twenty minutes.

68. At that same interview, the hiring managers would tell Plaintiffs they were hired.

69. The hiring managers would hurriedly present Plaintiffs with a set of documents and instructed Plaintiffs to sign if they wanted to accept the job offered.

70. The documents the hiring managers hurriedly gave the Plaintiffs were an application package with an employment agreement ("Agreement").

71. The Agreement is a three to four-page document with the job offer for the Plaintiffs detailing hourly pay, start date, and other essential details needed by human resources.

72.     Hidden within the Agreement in small English print are provisions where the applicant Plaintiffs are waiving their rights to a jury trial, their rights to bring forth a class action lawsuit, and agreeing to arbitration for any employment disputes.

73.     Hiring managers of the Defendant Corporations told Plaintiffs that if they did not sign the Agreement, they could not commence the job they were being offered.

74.     The hiring managers told the Plaintiffs this was a take-it-or-leave-it offer of employment, and the decision had to be made on the spot.

75.     The hiring manager did not explain to the Plaintiffs that they were signing an arbitration agreement, that they were waiving their right to a jury trial, or that they could not participate in a class action lawsuit if the Defendant Corporation violated their legal rights.

76.     The hiring managers did not allow Plaintiffs to review the Agreement.

77.     The applicant Plaintiffs were not given a copy of the Agreement nor allowed to take home the Agreement to review any of the forms before signing them.

78.     The applicant Plaintiffs were not given a copy of the arbitration agreement or the arbitration rules, nor were they allowed to have an attorney review the Agreement before signing.

79.     The Agreement contained no language suggesting that the applicant Plaintiffs have the Agreement reviewed by an attorney.

80.     None of the Plaintiffs recall executing the Agreement.

81.     Some of the Plaintiffs were not even given the Agreement until days after they started employment at Shoma Bazaar.

82.     The hiring managers would flip to the last page of the Agreement and tell the applicant Plaintiffs to sign so they can commence working.

83.     Many of the applicant Plaintiffs were immigrant workers who spoke or read little to no English and did not have knowledge of their legal rights as employees in the United States of America and under Florida law.

84.     Yet the hiring managers would coerce them to sign the English written Agreement because it was the only way the Plaintiffs could begin to work.

85.     The jobs the applicant Plaintiffs were applying for were paying between $8 to $12 per hour.

86.     Plaintiffs are lower-income individuals who applied for jobs at Shoma Bazaar and accepted the terms of the employment without knowledge because they were in dire financial need.

87.     Plaintiffs had neither the ability nor the incentive to comprehend the significance of executing an arbitration agreement, a waiver of trial by jury, or a waiver of bringing forth a class action against the Defendant Corporations.

88.     At all times, the Defendant Corporations knew that the applicant Plaintiffs were not adequately informed or had knowledge of the constitutional rights they were waiving by signing the Agreement.

89.     At all times, the Defendant Corporations knew or should have known that the majority of the applicant Plaintiffs were of a lower educational and income level, were in dire financial need, and for them obtaining a job in the Miami job market with an opportunity to earn tips and have total earnings slight above minimum wage was and is extremely difficult.

90.     Yet, the Defendant Corporations continued its malicious and coercive practices of having applicants waive their constitutional rights in return for employment, knowing that the Plaintiffs were at a disadvantage because they were in dire financial need and could not read English or understand the terms of the Agreement.

91.     At no point in time were the Plaintiffs allowed to revoke their consent to the Agreement.

92.     As such, Plaintiffs did not knowingly and voluntarily waive their constitutional rights to a jury trial, accept the arbitration agreement, or waive their rights to bring forth a class action lawsuit.

*Confiscation of Tips and Tip Credits*

93.     During the Plaintiffs' employment, Defendant Corporations claimed a 'tip-credit' for the Plaintiffs and the Putative Class members.

94.     Defendants paid these employees below the statutorily required minimum wage under the FLSA.

95.     For the Defendant Corporations to claim a 'tip-credit,' the Plaintiffs must be informed of the provisions of the 'tip-credit,' and all tips received by the Plaintiffs and the Putative Class members must be absolutely retained by Plaintiffs and pooled with only 'tipped' employees.

96.     However, the Defendant Corporations failed to comply with the 'tip-credit' requirements pursuant to the FLSA by including non-'tipped' employees, including but not limited to managers or supervisors who received a portion of the Plaintiffs' tips when they were not 'tipped' employees.

97.     The Defendant Corporations' failure to comply with the FLSA 'tip-credit' requirements results in their inability to claim a 'tip-credit' for the Plaintiffs.

98.     The Defendant Corporations, unable to claim a 'tip-credit,' are required to therefore compensate Plaintiffs with, at least, the required minimum wage.

99. The Defendant Corporations willfully refused to properly compensate Plaintiffs for minimum wage in violation of the FLSA, as the aforementioned 'tip-credit' was claimed despite their failure to comply with the 'tip-credit' requirements under the FLSA.

100. All records concerning the number of hours worked by Plaintiffs are in the Defendant Corporations' exclusive possession and sole custody and control. Therefore, the Plaintiffs cannot state the exact amount due at this time.

101. Plaintiffs, however, will exert their collective diligent efforts to obtain such information by appropriate discovery proceedings, which will be taken promptly in this case, and if required, an amendment to this Complaint will be submitted to set forth an amount due by the Plaintiffs.

*Failure to Provide Notice of the Tip Credit to Plaintiffs*

102. Federal law and Florida law require Defendants to provide specific notice to Plaintiffs and other similarly situated bartenders, bussers, and barbacks prior to claiming a tip credit.

103. During the previous three years, Defendants did not provide Plaintiffs and other similarly situated servers and bartenders with notice that Defendants attempted to retain a tip credit.

104. Plaintiffs and the federal minimum wage collective members are entitled to recover at least federal minimum wage for hours worked for the past three years.

105. Plaintiffs and the Florida minimum wage class members are entitled to recover at least the Florida minimum wage for hours worked for the past three years.

106. Plaintiffs retained the undersigned counsel and agreed to pay a reasonable attorney's fee for all related services.

**COUNT I**
**VIOLATION(S) OF THE FAIR LABOR STANDARDS ACT**
**(TIP CONFISCATION)**

107.     Plaintiffs hereby re-alleges and re-avers Paragraphs 1 through 106 as though set forth fully herein.

108.     Defendants employed Plaintiffs in its restaurant "Shoma Bazaar."

109.     Under the FLSA, Defendants are precluded from retaining any portion of the tips or overtips its employees earn for any reason.

110.     Under the FLSA, Defendants are precluded from distributing any of its employees' tips or overtips to traditionally non-tipped employees (such as owners, officers, directors, partners, managers, or supervisors).

111.     Defendants disregarded the FLSA's prohibition on retaining the tips and/or overtips earned by its employees by keeping a portion of the tips and overtips left—either in cash or by credit card—by customers for Plaintiffs.

112.     Defendants did not pay out or process Plaintiffs' cash tips through Defendants' payroll operator, Paychex.

113.     Defendants disregarded the FLSA's prohibition on distributing any of its employees' tips or overtips to traditionally non-tipped employees by distributing such tips and/or overtips to its' managers or supervisors.

114.     In addition to Defendants placing managers or supervisors in the tipping pool, Defendants incorrectly reported the amount of tips customers left for Plaintiffs in credit card transactions.

115.     The amount of tips clients left on credit card transactions did not precisely reflect the amount of tips shared in the Plaintiffs' payroll system.

116.   The amount of tips shared in the payroll system was less than the amount collected through credit cards.

117.   As a direct and proximate result of Defendants retaining a portion of the tips and/or overtips earned by its employees and distributing a portion of the tips and/or overtips to traditionally non-tipped employees, such as its managers and supervisors, Defendants violated the FLSA and damaged Plaintiffs.

118.   Plaintiffs are entitled to recover as damages all tips and overtips that Defendants improperly retained and/or that Defendants improperly distributed to traditionally non-tipped employees.

119.   Defendants willfully and intentionally refused to pay Plaintiffs all the tips and overtips they earned/received during the relevant time.

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court enter judgment in their favor and against Defendants and award Plaintiffs and the putative class: (a) the tips and overtips improperly withheld/distributed and an additional equal amount as liquidated damages, pursuant to 29 U.S.C. §§ 203(m)(2)(B) and 216(b); and (b) all reasonable attorney's fees and litigation costs as permitted under the FLSA; and any and all such further relief as this Court deems just and reasonable under the circumstances.

## COUNT II
## <u>VIOLATION(S) OF THE FAIR LABOR STANDARDS ACT</u>
## <u>(UNPAID MINIMUM WAGES)</u>

120.   Plaintiffs hereby re-alleges and re-avers Paragraphs 1 through 106 as though set forth fully herein.

121.   Plaintiffs were entitled to be paid full federal minimum wage in one or more workweeks for certain hours worked during their employment with Defendants.

122.    Defendants attempted to rely on the FLSA's tip credit but unlawfully permitted non-tipped employees (such as supervisors and managers) to participate in Defendants' tip pool along with Plaintiffs.

123.    Defendants also required the Plaintiffs to surrender tips to non-tipped supervisors and managers.

124.    Plaintiffs did not voluntarily share their tips with supervisors and managers.

125.    Therefore, Defendants must return all tips unlawfully retained by supervisors and managers and pay Plaintiffs the tip credit claimed.

126.    Plaintiffs seek to recover these federal minimum wages and tips under 29 U.S.C. § 216(b).

127.    Defendants knew Plaintiffs were non-exempt, tipped employees but willfully failed to pay the Plaintiffs in accordance with the FLSA.

128.    As a direct and proximate result of Defendants' unlawful pay practices, Plaintiffs have been damaged in the loss of federal minimum wages and tips for one or more weeks of work during their employment with Defendant.

129.    Defendants' willful and/or intentional law violations entitle Plaintiffs to an additional amount of liquidated, or double, damages.

130.    WHEREFORE, Plaintiffs respectfully requests that this Honorable Court enter judgment in his favor and against Defendants and award Plaintiffs and the putative class: (a) unliquidated federal minimum wage damages; (b) the tip credit unlawfully claimed by Defendant; (c) all tips unlawfully retained by Defendant; (d) liquidated damages; (e) all reasonable attorney's fees and litigation costs as permitted under the FLSA; and any and all such further relief as this Court deems just and reasonable under the circumstances.

**COUNT III**
**VIOLATION(S) OF THE FLORIDA MINIMUM WAGE ACT**
**UNPAID MINIMUM WAGES**

131. Plaintiffs hereby re-alleges and re-avers Paragraphs 1 through 106 as though fully set forth herein.

132. Defendants violated the terms of F.S. § 448.110 and the Florida Constitution's minimum wage requirements by requiring Front of the House employees to share their tips with non-tipped employees (such as Supervisors and Managers).

133. Plaintiffs did not voluntarily share their tips with Defendants' Supervisors and Managers.

134. Defendants, therefore, forfeit any tip credit under Florida law and owe each Plaintiff at least $3.02 for each hour of work they performed.

135. Plaintiffs have complied with the pre-suit notice, and all other conditions precedent to this action have been performed or waived by sending Defendants a written pre-suit Florida Minimum Wage demand letter as required by Florida law before this claim was filed.

136. On January 10, 2024, Plaintiffs served Defendants with a written pre-suit Notice pursuant to Fla. Stat. § 448.110.

137. More than 15 days have passed since Plaintiffs served a written pre-suit Notice on Defendants, and Defendants have failed to tender full payment to Plaintiffs.

138. From September 30, 2021, through September 29, 2022, the Florida Minimum Wage was $10.00 per hour.

139. From September 30, 2022, through September 29, 2023, the Florida Minimum wage was $11.00 per hour.

140. Defendants violated the FMWA and Florida Constitution's provision on minimum wages by allowing supervisors and managers to participate in a tip pool with Plaintiffs.

141. Defendants were aware of the requirements of the FMWA and the pertinent regulations thereto but acted willfully in failing to pay the Plaintiffs in accordance with the law.

142. As a direct and proximate result of Defendants retaining a portion of the tips that should have been paid to its front-of-the-house tipped employees and/or distributing a portion of the tips to traditionally non-tipped employees (such as managers or supervisors), Defendants violated the FMWA.

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court enter judgment in his favor and against Defendants and award Plaintiffs and the putative class: (a) unliquidated Florida minimum wage damages; (b) the tip credit unlawfully claimed by Defendant; (c) all tips unlawfully retained by Defendant; (d) liquidated damages; (e) all reasonable attorney's fees and costs permitted under Fla. Stat. § 448.110 and Florida law, and any and all such further relief as this Court may deem just and reasonable under the circumstances.

**COUNT IV**
**VIOLATION(S) OF THE FLORIDA MINIMUM WAGE ACT**
**RETALIATION AGAINST ANTONIO CASTILLO**

143. Plaintiff Antonio Castillo hereby re-alleges and re-avers Paragraphs 1 through 106 as though fully set forth herein.

144. Plaintiff Antonio Castillo brings this claim under the Florida Minimum Wage Act, Florida Statutes §§ 448.101, 448.102, and 448.109 et seq. for Defendants' retaliatory conduct.

145. Defendants knew of Plaintiff Castillo's complaints of unpaid tips, unlawful tip confiscation, and violation of federal and state minimum wage laws, as Mr. Castillo made the complaints to Shoma Bazaar managers or supervisors.

146. Mr. Castillo's most recent complaint was made to general manager David (unknown last name) ("GM David") on or about May 6, 2024.

147. Mr. Castillo complained about Shoma Bazaar's unpaid tips, unlawful tip confiscation, and federal and state minimum wage law violations.

148. Mr. Castillo had previously complained to the former general manager about Shoma Bazaar's unpaid tips, unlawful tip confiscation, and violation of federal and state minimum wage laws.

149. In conversation, GM David discovered Mr. Castillo had made previous complaints and how Mr. Castillo had to seek legal representation to enforce his rights.

150. Through the conversation, GM David became aware that Mr. Castillo was the "leader" in having the bartenders and bussers join the current lawsuit against Shoma Bazaar.

151. Mr. Castillo asked GM David to move on to another subject related to work and not this current lawsuit.

152. Shortly thereafter, on or about May 10, 2024, Plaintiff Castillo was not given any work hours for the upcoming week.

153. On May 13, 2024, Defendant terminated Mr. Castillo.

154. As a result of Defendants' actions, by and through the conduct of its agents, employees, or representatives, and Defendants' failure to make prompt remedial action to prevent unlawful tip confiscations and violations of state and federal minimum wage laws, deprived Mr. Castillo of statutory rights under state law.

155. Based on information and belief, Plaintiff alleges that Defendants' actions were done with malice and with disregard for his protected rights under the FMWA.

156. Defendants' alleged reasons for terminating Mr. Castillo are pretextual, as described above.

157. Plaintiff Castillo seeks his attorney's fees and costs as permitted by law.

WHEREFORE, Plaintiff Antonio Castillo respectfully requests that this Honorable Court enter judgment in his favor and against Defendants and award Plaintiff: (a) unliquidated damages; (b) liquidated damages; (c) all reasonable attorney's fees and costs permitted under law, and any and all such further relief as this Court may deem just and reasonable under the circumstances.

## COUNT V
## VIOLATION(S) OF THE FLSA
## RETALIATION AGAINST ANTONIO CASTILLO

158. Plaintiff Antonio Castillo hereby re-alleges and re-avers Paragraphs 1 through 106 as though fully set forth herein.

159. Plaintiff Antonio Castillo brings this claim under the Fair Labor Standards Act, 29 U.S. Code §§ 215 et seq. and 216 et seq. for Defendant's retaliatory conduct.

160. Defendants knew of Plaintiff Castillo's complaints of unpaid tips, unlawful tip confiscation, and unpaid minimum wages under the FLSA, as Mr. Castillo complained to Shoma Bazaar managers or supervisors.

161. Mr. Castillo's most recent complaint was made to general manager David (unknown last name) ("GM David") on or about May 6, 2024.

162. Mr. Castillo complained about Shoma Bazaar's unpaid tips, unlawful tip confiscation, and federal and state minimum wage law violations.

163. Mr. Castillo had previously complained to the former general manager about Shoma Bazaar's unpaid tips, unlawful tip confiscation, and violation of federal and state minimum wage laws.

164. In conversation, GM David discovered that Mr. Castillo had made previous complaints and that he now had to seek legal representation to enforce his rights.

165. Through the conversation, GM David became aware that Mr. Castillo was the "leader" in having the bartenders and bussers join the current lawsuit against Shoma Bazaar.

166. Mr. Castillo asked GM David to move on to another subject related to work and not this current lawsuit.

167. Shortly thereafter, on or about May 10, 2024, Plaintiff Castillo was not given any work hours for the upcoming week.

168. On May 13, 2024, Defendant terminated Mr. Castillo.

169. As a result of Defendants' actions, by and through the conduct of its agents, employees, or representatives, and Defendants' failure to make prompt remedial action to prevent unlawful tip confiscations and violations of state and federal minimum wage laws, deprived Mr. Castillo of statutory rights under state law.

170. Based on information and belief, Plaintiff alleges that Defendants' actions were done with malice and with disregard for his protected rights under the FLSA.

171. Defendants' alleged reasons for terminating Mr. Castillo are pretextual, as described above.

172. Plaintiff Castillo seeks his attorney's fees and costs as permitted by law.

WHEREFORE, Plaintiff Antonio Castillo respectfully requests that this Honorable Court enter judgment in his favor and against Defendants and award Plaintiff: (a) unliquidated damages; (b) front and back pay; (c) liquidated damages; (d) all reasonable attorney's fees and costs permitted under law, and any and all such further relief as this Court may deem just and reasonable under the circumstances.

## COUNT VI
## VIOLATION(S) OF THE FLORIDA MINIMUM WAGE ACT
## RETALIATION AGAINST MARGARELYS FLORES

173.    Plaintiff Margarelys Flores hereby re-alleges and re-avers Paragraphs 1 through 106 as though fully set forth herein.

174.    Plaintiff Margarelys Flores brings this claim under the Florida Minimum Wage Act, Florida Statutes §§ 448.101, 448.102, and 448.109 et seq. for Defendants' retaliatory conduct.

175.    Defendants knew of Plaintiff Flores's complaints of unpaid tips, unlawful tip confiscation, and violation of federal and state minimum wage laws, as Ms. Flores made the complaints to Shoma Bazaar managers or supervisors.

176.    On or about March 13, 2024, Ms. Flores complained regarding her unpaid tips, unlawful tip confiscation, and federal and state minimum wage law violations to Shoma supervisor Maria Gabriela Silva.

177.    On or about March 14, 2024, Ms. Flores complained regarding her unpaid tips, unlawful tip confiscation, and federal and state minimum wage law violations to Shoma supervisor Priscila (unknown last name).

178.    On or about March 15, 2024, Ms. Flores met with Priscila once again to complain about her unpaid tips, unlawful tip confiscation, and federal and state minimum wage law violations to Shoma supervisor Priscila (unknown last name) ("March 15th Meeting").

179.    At the March 15th Meeting, Priscila told Ms. Flores that Defendants Paul Price and Shoma were responsible for the unpaid tips.

180.    Defendants continued not to pay Ms. Flores's tips correctly, and she continued to complain about the Defendants' unlawful practices to supervisors.

181.    On April 29, 2024, Defendants terminated Ms. Flores.

182.    As a result of Defendants' actions, by and through the conduct of its agents, employees, or representatives, and Defendants' failure to take prompt remedial action to prevent unlawful tip confiscations and violations of state and federal minimum wage laws, deprived Ms. Flores of statutory rights under state law.

183.    Based on information and belief, Plaintiff Flores alleges that Defendants' actions were done with malice and with disregard for her protected rights under the FMWA.

184.    Defendants' alleged reasons for terminating Ms. Flores are pretextual, as described above.

185.    Plaintiff Flores seeks her attorney's fees and costs as permitted by law.

WHEREFORE, Plaintiff Margarelys Flores respectfully requests that this Honorable Court enter judgment in his favor and against Defendants and award Plaintiff Flores: (a) unliquidated damages; (b) liquidated damages; (c) all reasonable attorney's fees and costs permitted under law, and any and all such further relief as this Court may deem just and reasonable under the circumstances.

**COUNT VII**
**VIOLATION(S) OF THE FLSA**
**RETALIATION AGAINST MARGARELYS CASTILLO**

186.    Plaintiff Margarelys Flores hereby re-alleges and re-avers Paragraphs 1 through 106 as though fully set forth herein.

187.    Plaintiff Margarelys Flores brings this claim under the Fair Labor Standards Act, 29 U.S. Code §§ 215 et seq. and 216 et seq. for Defendant's retaliatory conduct.

188.     Defendants knew of Plaintiff Flores's complaints of unpaid tips, unlawful tip confiscation, and violation of federal and state minimum wage laws, as Ms. Flores made the complaints to Shoma Bazaar managers or supervisors.

189.    On or about March 13, 2024, Ms. Flores complained regarding her unpaid tips, unlawful tip confiscation, and federal and state minimum wage law violations to Shoma supervisor Maria Gabriela Silva.

190.    On or about March 14, 2024, Ms. Flores complained regarding her unpaid tips, unlawful tip confiscation, and federal and state minimum wage law violations to Shoma supervisor Priscila (unknown last name).

191.    On or about March 15, 2024, Ms. Flores met with Priscila once again to complain about her unpaid tips, unlawful tip confiscation, and federal and state minimum wage law violations to Shoma supervisor Priscila (unknown last name) ("March 15th Meeting").

192.    At the March 15th Meeting, Priscila told Ms. Flores that Defendants Paul Price and Shoma were responsible for the unpaid tips.

193.    Defendants continued not to pay Ms. Flores's tips correctly, and she continued to complain about the Defendants' unlawful practices to supervisors.

194.    On April 29, 2024, Defendants terminated Ms. Flores.

195.    As a result of Defendants' actions, by and through the conduct of its agents, employees, or representatives, and Defendants' failure to take prompt remedial action to prevent unlawful tip confiscations and violations of state and federal minimum wage laws, deprived Ms. Flores of statutory rights under federal law.

196.    Based on information and belief, Plaintiff Flores alleges that Defendants' actions were done with malice and with disregard for her protected rights under the FLSA.

197.    Defendants' alleged reasons for terminating Ms. Flores are pretextual, as described above.

198.    Plaintiff Flores seeks her attorney's fees and costs as permitted by law.

WHEREFORE, Plaintiff Margarelys Flores respectfully requests that this Honorable Court enter judgment in his favor and against Defendants and award Plaintiff Flores: (a) unliquidated damages; (b) liquidated damages; (c) all reasonable attorney's fees and costs permitted under law, and any and all such further relief as this Court may deem just and reasonable under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues and all counts of this Complaint so triable as a matter of right.

Dated: January 3, 2025.

By: /s/ *Andres F. Vidales*
**Andres F. Vidales, Esq.**
Florida Bar No.: 1041185
***Counsel for Plaintiffs***
9300 S. Dadeland Blvd., 4th Floor
Miami, FL 33156
Tel: (305) 670-1101
Fax: (305) 670-1161
andres.vidales@qpwblaw.com
reginald.clyne@qpwblaw.com
cecilia.quevedo@qpwblaw.com
sofia.arcila@qpwblaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2025, I electronically filed the foregoing with the clerk of court using CM/ECF. I also certify that the foregoing document is being served this day to all counsel of record identified on the attached service list in the matter specified, either via transmission of Notices of Electronic Filing generated by CM/ECF and/or via U.S. Mail.

By: /s/ *Andres F. Vidales*
**Andres F. Vidales, Esq.**
Florida Bar No.: 1041185

**SERVICE LIST**
Steven A. Siegel, Esq.
Fla Bar No.: 497274
ssiegel@fisherphillips.com
201 East Las Olas Boulevard
Suite 1700
Fort Lauderdale, FL 33301